**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ernest F.,

Plaintiff,

v.

Kilolo Kijakazi, *Acting Commissioner of Social Security*,

Defendant.

Case No. 20-cv-2656 (JFD)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ernest F. seeks judicial review of a final decision by Defendant Acting Commissioner of Social Security denying his application for a period of disability and for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and Defendant's Motion for Summary Judgment (Dkt. No. 19).

Because the Commissioner's decision is free of legal error and is supported by substantial evidence in the record as a whole, the Court denies Plaintiff's Motion for Summary Judgment, grants Defendant's Motion for Summary Judgment, and affirms the Commissioner's decision.

Plaintiff makes a single claim. He asserts that the Administrative Law Judge ("ALJ") "failed to provide [Plaintiff] a full and fair consideration as to whether he was limited to light work as of his date last insured." (Pl.'s Mem. Supp. at 9, Dkt. No. 18.) That claim has three subparts: Plaintiff's claim that the ALJ committed legal error when she decided not to hear the proffered testimony of Plaintiff's wife because the ALJ found that

testimony would be cumulative; a claim that the ALJ's decision is not supported by substantial evidence in the record as a whole; and a claim that the ALJ was not fair and prejudged the case.

Plaintiff's work history gave him a last insured date of December 31, 2016. In order to be eligible for DIB, any disability Plaintiff suffered had to have begun before that date. *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Social Security will not pay DIB for disability that begins after a claimant's date last insured. Plaintiff's claimed onset-of-disability date was November 1, 2016, meaning that the relevant period of time is between November 1, 2016 and December 31, 2016.

Plaintiff applied for DIB based on his claim that he was disabled by a cardiac illness during December of 2016, before his last-insured date of December 31, 2016. Plaintiff did not seek medical attention during December of 2016—indeed, Plaintiff apparently did not see a doctor at all between sometime in 2014 and late February of 2017—so there are no medical records of what occurred in December of 2016. Faced with this evidentiary gap, Plaintiff asserts that medical evidence generated during the diagnosis and treatment of a cardiac event in February and March of 2017, in combination with Plaintiff's own testimony regarding his symptoms during December 2016, in turn corroborated by Plaintiff's wife's observations of Plaintiff during December, 2016, supports an inference that Plaintiff was disabled during December of 2016, before his last-insured date of December 31, 2016. Therefore, concludes Plaintiff, he is eligible for DIB.

Plaintiff states that the lack of medical evidence from December of 2016 is due to Plaintiff not having health insurance and therefore not being able to afford care. Plaintiff

claims that the ALJ erred by not considering this explanation for a lack of evidence and also by refusing to allow his wife to testify. Plaintiff asks the Court to reverse the Commissioner's final decision of no disability and remand this matter to the Social Security Administration. With the issue thus framed, the Court focuses its analysis on those portions of the record that bear directly on Plaintiff's claim.

## I. BACKGROUND

On October 10, 2017,[1] Plaintiff, a 57-year-old male with a high school education, applied for a period of disability and DIB under Titles II and XVIII of the Social Security Act. (Soc. Sec. Admin. R. (hereinafter "R.") 123-126.)[2] Plaintiff stated that his disabling impairments were heart failure, cardiomyopathy, hypertension, pleural effusion, liver disease, diverticulitis, and ongoing, unspecified issues with his left ankle, which Plaintiff described as "previously shattered." (R. 37.) Plaintiff stated that his disability began on March 1, 2017. (R. 123.) His disability onset date was later changed by Minnesota Disability Determination Services[3] ("DDS") to November 1, 2016, based on changes in his work and income levels. (R. 10, 135.).

[1] The date of Plaintiff's application is sometimes set forth in the administrative record as October 10, 2017 (R. 123) and sometimes as October 8, 2017 (R. 37). This minor discrepancy has no bearing on the outcome of this case.

[2] The Social Security administrative record is filed at Dkt. No. 14. That record is consecutively paginated, and for convenience and ease of use the Court cites to the page numbers in the Social Security Administration's administrative record rather than the Court's docket number and page.

[3] Disability Determination Services is a Minnesota state government agency that "evaluates claims for disability benefits using Social Security Administration ('SSA') guidelines." "SSA employs the services of the Minnesota DDS to make medical eligibility decisions

Because there was no medical evidence in the file from November and December of 2016, DDS found Plaintiff had not established a medically determinable impairment and found him not disabled. (R. 41.) The Social Security Administration ("SSA") denied Plaintiff's claim both initially (R. 51) and after reconsideration (R. 57). Plaintiff then timely requested a hearing before an ALJ. (R. 104.) A hearing was held before ALJ Virginia Kuhn on December 23, 2019 in Minneapolis, Minnesota. Plaintiff testified at the hearing and was represented by counsel. (R. 25, 29-32.)

**A. The Administrative Hearing Before The ALJ**

At the hearing before the ALJ, Plaintiff testified that at "Christmas time" of 2016 he "wasn't breathing very good" and that his feet were so badly swollen he could not put on his boots. (R. 29). Plaintiff testified that he had difficulty on his job, because "[i]t was hard getting up and down stairs, carrying things was impossible. Breathing was impossible." (R. 30). At two points in his testimony, Plaintiff testified that when he laid down he experienced the sensation of drowning. (R. 30, 31.) Plaintiff testified that he was not able to finish the job he was working on at the time, which he described as being a subcontractor at a hotel.[4] (R. 30.)

for disability and blindness applicants on behalf of the Commissioner of SSA." mn.gov/deed/programs-services/dds/ (last visited August 27, 2022).

[4] According to the transcript of the December 23, 2019 hearing before the ALJ, Plaintiff testified that he did not go to the hospital because he had no money and no insurance. Later on the same page of the transcript, however, when asked by his counsel why he was not able to finish the job at the hotel, Plaintiff answered, "I was hospitalized." (R. 30.) Neither counsel nor the ALJ inquired further about this apparent, serious contradiction. Given the lack of reaction from counsel and the ALJ to testimony that, if accurate, would mean there would indeed be medical records for the month of December 2016, this Court believes that

Following Plaintiff's own testimony, Plaintiff's counsel sought to have Plaintiff's wife testify. The ALJ initially stated she would allow the testimony, even though she was skeptical whether Plaintiff's wife would testify to anything that was not merely repetitive. As the ALJ put it, "what is she going to say that he hasn't already said?" (R. 32.) Counsel responded that "greater credibility" would come "through the testimony of other family members particularly when no medical insurance was had." The ALJ and counsel continued this exchange, with the ALJ noting with increasing emphasis that there was evidence in the record that would contradict Plaintiff; therefore, if Plaintiff's wife testified consistently with Plaintiff, it would simply be more testimony that would be contradicted by the record, and "it's highly unlikely that the wife's [testimony] is going to get you any closer." (R. 32.) The ALJ eventually decided not to permit Plaintiff's wife to testify. (R. 34.)

**B. The ALJ's Written Decision**

In a written decision dated April 7, 2020, the ALJ found Plaintiff not disabled between his alleged onset date and his date last insured and denied his application for a period of disability and DIB. (R. 15.)

The ALJ first confirmed that Plaintiff's last-insured date was December 31, 2016. The ALJ then turned to the well-known, five-step, sequential process made applicable to DIB applications by 20 C.F.R. § 404.1520(a). That process can terminate at any of the five steps if the ALJ determines that the criteria requisite to passing on to the next step have not

---

the statement "I was hospitalized" is most likely a transcription error. On the record presented to this Court, it is not possible to say more than that.

been satisfied. "The sequential evaluation process is a series of five 'steps' that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step." 20 C.F.R. § 404.1520.

At step one, the ALJ determined that Plaintiff did not engage in substantial, gainful activity during the period covered by his application, that is, November 1, 2016 to December 31, 2016. (R. 13.) The ALJ therefore proceeded to step two.

At step two, it was Plaintiff's burden to show that he had a severe, medically determinable impairment or combination of impairments that could be expected to end in death or which had lasted or could be expected to last for a continuous period of not less than 12 months. Plaintiff also had to show that this severe impairment began at some point during the time covered by the application, the two months preceding his last-insured date, November and December of 2016. The ALJ found that Plaintiff had not met this burden. The process therefore stopped, the ALJ found Plaintiff had not been disabled in November and December 2016, and Plaintiff's application for DIB was denied.

Plaintiff suffered a heart attack in 2014. He did not follow up with care and apparently did not see a health care provider again until February 2017 when he experienced shortness of breath and edema in his legs. (R.212, 216, 222, 300.) The shortness of breath was evidently related to a serious cardiac condition. One of Plaintiff's treating physicians, a specialist cardiologist, told Plaintiff that his prognosis was "very grim" without aggressive medical treatment. (R. 303.)

The ALJ nevertheless found herself unable to infer, from Plaintiff's condition in February and March of 2017, that Plaintiff had a severe impairment in late 2016. The ALJ classified as "purely speculative" the attempt to tie Plaintiff's symptoms in 2017 to his condition in 2016. (R. 14.) The ALJ found that the lack of medical evidence from 2016 was attributable to Plaintiff's decision not to seek medical care at any time between his 2014 heart attack and his early 2017 episode of shortness of breath and edema. (*Id.*) As to Plaintiff's protest that this was due to his financial condition and lack of health insurance, the ALJ noted that Plaintiff had presented no evidence of any attempt to obtain free or low-cost medical care, that Plaintiff's wife worked, and that the absence of an application by Plaintiff for Supplemental Security Income was an indication that Plaintiff made too much money to qualify for SSI. (*Id.*)

The SSA Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then timely sought judicial review by this Court. (Compl., Dkt. No. 1.)

## II. STANDARD OF REVIEW

Courts review the final decision of an Executive Branch agency under a substantial evidence standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301-02 (2015)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (cleaned up). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it

adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F. 3d 1010, 1012 (8th Cir. 2000)); *see also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence is 'more than a mere scintilla . . . .'") (quoting *Consolidated Edison Co.*, 305 U.S. at 229). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F. 3d at 1022 (citing *Craig v. Apfel*, 212 F. 3d 433, 436 (8th Cir. 2000)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the Commissioner's decision. *Robinson v. Sullivan*, 956 F. 2d 836, 838 (8th Cir. 1992).

The burden of proving disability is on the claimant. See *Roth v. Shalala*, 45 F. 3d 279, 282 (8th Cir. 1995). To be disabled under the Social Security Act, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted, or be expected to last, at least 12 months. *Titus v. Sullivan*, 4 F. 3d 590, 594 (8th Cir. 1993).

## III. ANALYSIS

Plaintiff argues that the ALJ both committed legal error and issued a decision that was not supported by substantial evidence. Plaintiff argues that the ALJ erred legally by ignoring Social Security Ruling 18-1p, which sets out the methodology ALJs should use to determine the onset date of disability when evidence of a specific onset date is scant or

lacking. Plaintiff also charges the ALJ with having prejudged the case, and states that the evidence in the record supports a finding of disability. For the reasons below, the Court concludes that Plaintiff is incorrect. The ALJ did not err legally, and her decision is supported by substantial evidence in the record as a whole.

**A. Social Security Ruling 18-1p Does Not Apply To The Facts Of This Case**

Plaintiff argues that the ALJ committed legal error by not using the methodology of Social Security Ruling ("SSR") 18-1p. That SSR gives direction to ALJs in deciding when a claimant's disability began. It states, in relevant part: "The date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records . . ." and "[w]e may consider evidence from other non-medical sources *such as the claimant's family*, friends, or former employers, if we cannot obtain additional medical evidence or it does not exist (e.g., the evidence was never created or was destroyed), and we cannot reasonably infer the date that the claimant first met the statutory definition of disability based on the medical evidence in the file." (Emphasis added.)

Plaintiff's argument fails because SSR 18-1p only applies when a finding of disability has been made, but the onset date of the disability is unclear. In this case, there was never a finding of disability and one cannot assign a beginning date to a disability that never began.

A finding of disability after December 31, 2016 would have been pointless, and Plaintiff did not attempt to show any such disability existed. Because such a hypothetical

disability would have begun after Plaintiff's last-insured date, he would not have been awarded DIB for a disability of such late onset.

Step two of the sequential evaluation requires an ALJ to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521.

Plaintiff introduced into evidence no medical records at all for the period between 2014 and February of 2017, a period that includes the time—November and December of 2016—that Plaintiff claims to have been disabled. Apparently, no such records exist. The only evidence supporting a finding of disability was Plaintiff's own uncorroborated testimony that he experienced symptoms while working at a hotel and that those symptoms consisted of edema in his legs, shortness of breath, and a feeling of drowning when Plaintiff would lie down. Plaintiff did not seek medical attention for these symptoms. Plaintiff has no medical insurance and this Court is certainly sympathetic to Plaintiff's apprehension about the cost of medical care. However, it is nevertheless fair to note that if a claimant is experiencing truly severe symptoms, at the level that could, if corroborated by medical evidence, support a finding of disability under the Social Security Act, even a claimant of limited means would seek emergency care—as Plaintiff himself did in February of 2017—and that if one does not seek emergency care, that is one piece of evidentiary data from which a finder of fact can legitimately draw an inference about the relative severity of the claimant's symptoms.

### B. The ALJ's Decision Not To Take Testimony From Plaintiff's Wife Was Not Erroneous When Plaintiff's Counsel Could Not Identify Any Non-Cumulative Evidence Plaintiff's Wife Would Offer.

Plaintiff points out that his testimony need not have been uncorroborated. Plaintiff's wife was prepared to testify. But the ALJ was not obligated to allow a witness to testify when Plaintiff's own counsel candidly conceded that he would not elicit from Plaintiff's wife any testimony other than what the ALJ had already heard from Plaintiff. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). The exclusion of the testimony of Plaintiff's wife was not legal error.

The colloquy between the ALJ and Plaintiff's counsel leads Plaintiff to charge that the ALJ prejudged the case. This is a serious allegation, and in response the Court has undertaken a searching review of the record, particularly of the hearing record and the ALJ's written opinion. Following that review, the Court finds Plaintiff's allegation lacks any support. It is true that at the hearing, the ALJ might have demonstrated more patience with a claimant who was in ill health (even if not disabled) and under financial strain. The ALJ's remark that "I will let you do it [elicit testimony from Plaintiff's wife] only because I don't want to have you say, she was so mean to me," is regrettable. (R. 33). But this single remark came in the context of a long and no doubt frustrating back-and-forth exchange between Plaintiff's counsel and the ALJ in which the ALJ asked repeatedly what additional, non-cumulative evidence Plaintiff's wife would offer and Plaintiff's counsel repeatedly said, in slightly different ways, "none." Even at the very end of the hearing, the ALJ gave counsel a final chance to describe new evidence that he would elicit from Plaintiff's wife. The ALJ asked counsel "is it any different than what's been already said?"

but counsel responded only "[i]t's supportive of what he has to say." Only at that point, after, by this Court's count, eleven question-and-answer exchanges in which the ALJ sought to have counsel tell her what additional evidence Plaintiff's wife would offer, did the ALJ definitively rule that Plaintiff's wife would not be permitted to testify.

The ALJ was under no obligation to permit cumulative testimony. The decision to decline to hear the testimony of Plaintiff's wife was not legal error, and this decision does not demonstrate that the ALJ had prejudged this case. The single remark, quoted above, about being "mean," does not, in context, demonstrate any bias. In fact, it demonstrates that the ALJ, out of concern about how she would be perceived, was more willing than the law required to allow Plaintiff's wife to testify. The exchange between ALJ and counsel was, at times, blunt, but the ALJ gave counsel eleven chances to explain why Plaintiff's wife should testify and not once in those eleven exchanges did counsel identify non-cumulative testimony she could offer. The ALJ's decision was not erroneous. Plaintiff received fair process from an unbiased ALJ.

**C. The ALJ's Finding That Plaintiff Was Not Disabled Is Supported By Substantial Evidence In The Record As A Whole.**

Finally, the Court concludes that the ALJ's finding that Plaintiff had not been disabled in November and December of 2016 is supported by substantial evidence in the record as a whole.

Plaintiff asserts that his condition in February and March of 2017 supports an inference that Plaintiff was disabled in December of 2016. As Plaintiff puts it, "The question becomes – what medical inference could be made as to how [Plaintiff] was

functioning on December 31, 2017 based on how he presented medically on February 28, 2017?" (Pl.'s Mem. at 10.) In fact, Plaintiff's "Statement of the Facts" portion of his brief to this Court is entirely devoted to a recitation of Plaintiff's medical history from February 28, 2017, to November 22, 2019. Plaintiff goes on to state that "the ALJ's Hearing Decision is devoid of any real engagement with the medical records which start in February 2017 and continue." (*Id.* at 11.) The difficulty for Plaintiff, as discussed below, is that the medical records show Plaintiff was not disabled.

Plaintiff is correct that the ALJ's discussion of the relationship between Plaintiff's February/March condition and his December condition is sparse. It is also conclusory. The ALJ stated that "examination findings from February 2017 do not support a medically determinable impairment on or prior to the DLI," and later adds "[a] LVEF of 15% in March 2017 does not establish any level of medically determinable impairment or limitations back to December of 2016." (R. at 4-5.) "LVEF" is probably an acronym for "left ventricular ejection fraction." Neither Plaintiff nor the ALJ explain this, however, nor do they tell the Court the significance of having an LVEF of 15%.

In support of her conclusory statements, the ALJ states only that (a) Plaintiff's leg swelling "quickly resolved by the following month after receipt of treatment in February 2017. His alleged shortness of breath cannot be related back to on or prior to the DLI, as he had not had any treatment for a few years since his 2014 myocardial infarction."

The question for the Court, though—as Plaintiff himself, ironically, is at pains to point out—is not whether the ALJ's decision is supported by substantial evidence cited in the ALJ's opinion, but whether the ALJ's decision is supported by substantial evidence in

the record as a whole. (Pl.'s Mem. Supp. at 7 ("There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as a whole.'").) To answer that question, the Court reviewed the medical evidence itself. The Court finds that Plaintiff's medical records in February and March of 2017 do not support a finding of disability in February and March of 2017, never mind November and December of 2016. It appears Plaintiff came to the emergency room of the District One Hospital in Faribault on February 28, 2017 in considerable distress and was seriously ill. After discharge, however, Dr. Sykora noted that "he feels much better, but still has some shortness of breath and fatigue." (R. 264.) Later, Dr. Sykora notes "Since discharge from the hospital, the patient has been feeling much better. Patient has no other concerns." (R. 265.) Plaintiff is described as "pleasant, alert" and in "no acute distress." (*Id.*) This is not surprising, given that examinations of his chest and respiratory system, cardiac system, and gastrointestinal system were all normal. (*Id.*) A later exam at the Minneapolis Heart Institute by specialists similarly found Plaintiff "in no acute distress," and found all nine of the bodily systems they examined were normal. (R. 277.)

The Court will not summarize the many pages of the medical records in the administrative record of this case. Suffice it to say that Plaintiff did not point out, nor did this Court find, anything in those records that showed Plaintiff to be disabled in February/March of 2017. Plaintiff had a frightening episode of shortness of breath on February 28, 2017. He went to the emergency room. Physicians found some underlying conditions, including cardiac insufficiency, diverticulitis, and liver disease. But within a few days, Plaintiff was feeling well enough to leave the hospital, and his doctors

consistently used the phrase "no current distress" to describe him. From what this Court can see, Plaintiff has chronic conditions that are being managed with medication. Given the requirement that a medically determinable severe impairment is a prerequisite to a finding of disability, this Court cannot conclude that Plaintiff was disabled in December of 2016.

As the ALJ points out, Plaintiff described his February/March 2017 symptoms as a worsening of his December 2016 systems. The February/March symptoms must have been worse than those of December, because Plaintiff was sufficiently alarmed by what he was experiencing on February 28 to go to the emergency room, whereas in December he was not. On the administrative record of this case, the Court cannot find that Plaintiff was disabled in February and March. And if his symptoms were milder in December, then he was also not disabled in December.

The ALJ's decision is supported by substantial evidence in the record as a whole.

## IV. CONCLUSION

The ALJ was unbiased and did not prejudge this case. The ALJ did not err by excluding the potential testimony of Plaintiff's wife. Plaintiff submitted no direct medical evidence from December of 2016 in support of his claim of disability, but did submit evidence of his condition in February and March 2017. While the ALJ did not write at any length about whether Plaintiff's medical condition in February 2017 supported a conclusion that he was disabled before his date last insured, the ALJ's decision is supported by substantial evidence in the record as a whole.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 17) is **DENIED**;
2. Defendant's Motion for Summary Judgment (Dkt. No. 19) is **GRANTED**; and
3. The decision of the Social Security Administration is **AFFIRMED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 30, 2022

s/ *John F. Docherty*
John F. Docherty
United States Magistrate Judge